UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:15-cr-00154-JAW |
| | ) | |
| JACK PALMER | ) | |

**ORDER ON MOTION IN LIMINE TO ADMIT PHOTOGRAPHS AND EVIDENCE OF PAST CONDUCT**

With trial looming in this child pornography case, the Court grants in part and dismisses in part the Government's motion in limine.  The Court rules admissible photographs of images of naked children that the Defendant posted on the walls of his apartment as well as photographs of the children's clothing and baby pacifiers that law enforcement found in his apartment.  The Court declines to make a final ruling as to the admissibility of evidence that the Defendant previously downloaded child pornography at a municipal library and evidence that the Defendant's landlord had prior knowledge of the Defendant's downloading of child pornography.  The Court reserves those issues for trial.

I.    **BACKGROUND**

A.    **The Procedural Background**

On September 16, 2015, a federal grand jury indicted Jack Palmer for possession of child pornography, an alleged violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252(b)(2) and 2256(8)(A).[1]  *Indictment* at 1 (ECF No. 3).  The charge is scheduled for

---

[1]     The indictment also contains a forfeiture allegation, demanding forfeiture of a laptop computer and a hard drive.  *Indictment* at 2.

jury selection on September 12, 2016, with trial to follow immediately thereafter. *Notice of Hr'g* (ECF No. 42); *Id.* (ECF No. 48).  On July 27, 2016, the Government filed a motion in limine, asking that the Court rule in advance of trial as to the admissibility of certain photographs and instances of past conduct of the Defendant. *Gov't's Mot. in Limine to Admit Photographs and Evid. of Past Instances of Possessing Child Pornography* (ECF No. 40) (*Gov't's Mot.*).  On August 17, 2016, Mr. Palmer responded in opposition to the motion.  *Def.'s Opp'n to Gov't's Mot. in Limine to Admit Photographs and Evid. of Past Instances of Possessing Child Pornography* (ECF No. 44) (*Def.'s Opp'n*).  The Government replied on August 29, 2016.  *Gov't's Reply to the Def.'s Opp'n to Gov't's Mot. in Limine to Admit Photographs and Evid. of Past Instances of Possessing Child Pornography* (ECF No. 46) (*Gov't's Reply*).

### B.    Factual Background

The September 16, 2015 indictment charges Mr. Palmer with possession of child pornography on October 23, 2014.  *Indictment* at 1.  The Government represents that on October 23, 2014, law enforcement conducted a search of Mr. Palmer's residence in Winter Harbor, Maine, pursuant to a search warrant, seeking evidence of his unlawful possession of child pornography.  *Gov't's Mot.* at 1.  The Government says that as a result of the search, its forensic examination of the computer and hard drive revealed 312 images and five videos of child pornography.  *Id.*  It says that law enforcement later reviewed CDs recovered from Mr. Palmer's residence and identified additional child pornography.  *Id.* at 1–2.  In addition to the child pornography on the laptop, hard drive, and CDs, the Government represents that law enforcement found

2

inside Mr. Palmer's residence paper photographs of naked children posted on the walls, children's clothing, children's underwear, and pacifiers for babies. *Id.* at 2.

The Government also states that a special agent from Homeland Security spoke with Mr. Palmer's landlord, Larry Smith, on May 6, 2016. *Id.* Mr. Smith confirmed that Mr. Palmer had been living at the apartment complex for about fifteen years. *Id.* At some point, Mr. Smith became aware that Mr. Palmer had been viewing child pornography, and he pleaded with him to stop doing so. *Id.* Mr. Palmer responded that he would not get into trouble because he was not downloading child pornography. *Id.*

On at least one occasion, Mr. Smith said Mr. Palmer entered Mr. Smith's office and used Mr. Smith's computer to view child pornography. *Id.* Mr. Smith called the police and removed the computer to ensure Mr. Palmer did not continue to view child pornography in his office. *Id.* at 2–3.

On July 8, 2013, according to the Government, the Winter Harbor Library expelled Mr. Palmer for viewing child pornography at the library. *Id.* at 3. Mr. Palmer admitted being expelled from the library for doing so. *Id.*

To its motion, the Government attached:

 (1) twelve photographs of child pornography that it says were posted on Mr. Palmer's wall, *Id.* Attach. 1;

(2) seven photographs of Mr. Palmer's apartment depicting where the child pornography was posted, *Id.* Attach. 2;

(3) two photographs of children's clothing, *Id.* Attachs. 3, 4;

(4) two photographs of children's underwear, *Id.* Attachs. 5, 6;

(5) a photograph of baby pacifiers, *Id.* Attach. 7;

(6) an October 28, 2014 report of a polygraph examination of Mr. Palmer, *Id.* Attach. 8;

(7) an October 23, 2014 report of an interview with Mr. Palmer, *Id.* Attach. 9;

(8) a May 16, 2016 report of an interview with Larry Smith, *Id.* Attach. 10;

(9) a July 8, 2013 report of an incident at the Winter Harbor Library, *Id.* Attach. 11; and

(1) a July 21, 2016 report of an interview with Winter Harbor Police Officers. *Id.* Attach. 12.

## II.   THE PARTIES' POSITIONS

### A.   The Government's Motion

The Government concedes that none of this evidence is admissible to prove something about Mr. Palmer's character or to demonstrate his propensity to commit the charged crime. *Gov't Mot.* at 3. However, the Government argues that this evidence is admissible for another purpose "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* (quoting FED. R. EVID. 404(b)(2)). Before admitting such evidence, the Government acknowledges that the Court must find it has "special relevance," that is, "relevance for any purpose apart from showing propensity to commit a crime." *Id.* at 3–4 (quoting *United States v. Doe*, 741 F.3d 217, 229 (1st Cir. 2013)). At the same time, even if the court finds "special relevance," the court may exclude the evidence

under Rule 403. *Id.* at 4. The Government asserts that the special relevance of this evidence is to demonstrate Mr. Palmer's "prurient interest in young children and . . . his intent to possess child pornography." *Id.* at 6.

The Government maintains that this evidence "refutes that the defendant possessed the child pornography on accident or by mistake." *Id.* It cites *United States v. Sebolt*, 460 F.3d 910, 918 (7th Cir. 2006) as concluding that similar evidence was admissible to demonstrate the defendant's sexual interest in young boys. *Id.* Conceding that the Seventh Circuit in *Sebolt* was concerned about the admissibility of the actual clothing, the Government says that it does not intend to offer the actual clothing into evidence, only photographs of the clothing. *Id.* Regarding the paper photographs of naked children, the Government cites caselaw from other circuits upholding the admission of child erotica and pornography in similar cases. *Id.* at 4–5. The Government also contends that Mr. Palmer's prior act of possession of child pornography is admissible under Federal Rule of Evidence 414(a). *Id.* at 7–11. Finally, the Government argues that the proposed evidence is admissible under Rule of Evidence 403 because the probative value is not substantially outweighed by the prejudicial impact. *Id.* at 11–12.

## B.    Jack Palmer's Response

Mr. Palmer contends that evidence of his alleged sexual attraction to children is inadmissible. *Def.'s Opp'n* at 2. Even though Mr. Palmer agrees that in some cases such evidence is admissible, he maintains that the "facts here do not support admissibility." *Id.* Contrary to the Government's worry, Mr. Palmer represents that

he has never set forth a defense that he downloaded child pornography by accident or mistake. *Id.* Mr. Palmer says that he anticipates the Government will produce evidence of images seized from his computer, that these images depicted children under the age of 18, and that the images traveled in interstate commerce. *Id.* at 4. This cumulative evidence, he says, "could suffice." *Id.* Mr. Palmer is concerned that the admission of evidence of the photographs, clothing, and pacifiers "would unfairly tilt toward Mr. Palmer's propensity to possess child pornography." *Id.* He worries that the evidence would be "highly likely to inflame the jury," and "no limiting jury instruction could reasonably be expected to mitigate the emotional impact of such inflammatory evidence." *Id.* at 5.

Mr. Palmer also objects to evidence of prior instances of possession of child pornography. *Id.* at 5. He agrees that Rule 414 permits admission in a child molestation case of evidence that the defendant molested any other child, but he argues that the application of the rule must comport with the accused's due process right to a fair trial and a case specific Rule 404(b)/403 balancing of special relevance, probative value, and any risk of unfair prejudice. *Id.* at 5–7.

## C.    The Government's Reply

The Government replies by arguing that Mr. Palmer does not have the right to assert strategic choices in an effort to limit the Government's evidence. *Gov't's Reply* at 2. The Government notes that Mr. Palmer has never entered into a stipulation consistent with his assertion that he does not intend to raise accident or mistake as a defense. *Id.* The Government points to *United States v. Dudley*, 804 F.3d 506, 516–

17 (1st Cir. 2015) as supporting its position. *Id.* at 3–4. The Government concedes that evidence of the images of naked children on Mr. Palmer's walls would be prejudicial but insists they would not be unfairly prejudicial. *Id.* at 5–8.

## III.   DISCUSSION

### A.   The Wall Photographs, Clothing, and Baby Pacifiers

#### 1.   The "Could Suffice" Argument

Mr. Palmer's argument that the Government's evidence without the contested exhibits "could suffice," *Def.'s Opp'n* at 4, to sustain its burden of proof is a non-starter. To prove criminal possession of child pornography, the Government bears the burden to establish beyond a reasonable doubt that the defendant's possession was knowing. 18 U.S.C. § 2252(a)(2) ("knowingly receives"), § 2252A(a)(5)(b) "knowingly possesses, or knowingly accesses with intent to view"); JUDGE TORRESEN'S PATTERN CRIM. JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE FIRST CIRCUIT § 4.18.2252 (updated Jun. 27, 2016) (TORRESEN). "'[K]nowingly'…means that the act was done voluntarily and intentionally and not because of mistake or accident." *United States v. Tracy*, 36 F.3d 187, 95 (1st Cir. 1994); TORRESEN § 4.18.2252.

Even though Mr. Palmer claims that he has never asserted and will not assert a "mistake or accident" defense, the Government still bears the burden to prove beyond a reasonable doubt each element of the offense, including knowing possession and the absence of mistake or accident. *See United States v. Jones*, 674 F.3d 88, 93 (1st Cir. 2012). The "prosecution is entitled to prove its case by evidence of its own choice." *Old Chief v. United States*, 519 U.S. 172, 186 (1997); *Dudley*, 804 F.3d at

516. Here, Mr. Palmer posting photographs of naked children on the walls of his apartment and his possession of children's clothing and baby pacifiers constitute evidence from which a jury could conclude he had a sexual interest in children and therefore that his possession of child pornography was intentional, not a mistake.[2]

### 2.   Rule 404(b)

Rule 404(b) provides in part:[3]

(1) **Prohibited Uses.**   Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) **Permitted Uses . . . .**   This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

FED. R. EVID. 404(b)(1)(2).   Last year, the First Circuit addressed the analytic path the trial court should follow to determine admissibility under this Rule.   *United States v. Habibi*, 783 F.3d 1, 2–4 (1st Cir. 2015).   To be admissible, the Rule 404(b) evidence must have "special relevance," that is "relevant for any purpose apart from showing propensity to commit a crime."   *Id.* at 2 (quoting *Doe*, 741 F.3d at 229) (quoting *United States v. Rodriguez-Berrios*, 573 F.3d 55, 64 (1st Cir. 2009)).   Even if the proposed evidence has special relevance, it must still survive a Rule 403 balancing analysis.   *Id.* at 4; *Doe*, 741 F.3d at 229.

---

[2]      There is no indication that Mr. Palmer has offered to stipulate that the Government need not prove absence of mistake or accident.   *See Gov't's Reply* at 2.   If he had done so, the Court does not reach whether, under *Dudley*, the Government would still be allowed to introduce the wall photographs, the clothing and the pacifiers.   *Dudley*, 804 F.3d at 517 ("Despite Dudley's proposed stipulation, then, it seems clear that the government would have retained the burden to prove that Dudley knowingly possessed child pornography and, therefore, showing the images served a valid, non-cumulative purpose") (internal punctuation and citation omitted).

[3]      The Court omitted the portion of Rule 404(b) that deals with the requirement of prior notice in a criminal case.   By filing the motion in limine, the Government complied with that part of the Rule.

The Court agrees with the Government that the evidence has a special relevance to this case. As the Government is claiming that Mr. Palmer knowingly possessed child pornography, the Court views the evidence that Mr. Palmer had photographs of naked children posted on the walls of his apartment as well as children's clothing and the baby pacifiers in his apartment as tending to confirm that Mr. Palmer had a sexual interest in children and therefore that he had a motive to access child pornography and the intent to do so, and that he did not access the child pornography by mistake or accident. This ruling is consistent with rulings by other courts. *See United States v. Gendron*, 18 F.3d 955, 969 (1st Cir. 1994) (upholding admission of evidence of legal child erotica in child pornography case); *United States v. Gonyer*, 761 F.3d 157, 162–64 (1st Cir. 2014) (upholding admission of defendant's sexual relationship with the minor depicted in the images under Rule 404(b)); *United States v. Dornhofer*, 859 F.2d 1195, 1199 (4th Cir. 1988) ("Dornhofer's notebook containing pictures of nude children…could be used to show Dornhofer's predisposition toward child pornography as well as his lack of mistake when he ordered the child pornography in question"); *United States v. Vosburgh*, 602 F.3d 512, 537–38 (3rd Cir. 2010); *United States v. Hentzen*, 638 Fed. Appx. 427, 434 (6th Cir. 2015) ("If there is independent evidence that the defendant had seen or knew of the child erotica, the erotica could support an inference of a sexual interest in children"); *United States v. Caldwell*, No. 97-5618, 1999 U.S. App. LEXIS 7417, (6th Cir. 1999); *United States v. Riccardi*, 258 F. Supp. 2d 1212, 1234–35 (D. Kan. 2003).

The Court's Rule 403 analysis supports the admissibility of this evidence. Most of the items the Government seeks to admit are legal. For example, there is nothing illegal about a baby pacifier or children's clothing, therefore the common concern that a jury will conclude that because a defendant committed a prior criminal act, he must have committed the one charged, does not apply to these items. Regarding the photographic evidence, some probably fit within the legal definition of child pornography; some do not.[4] *See* 18 U.S.C. § 2256(2)(A), (8). The probative value of these exhibits, however, is apparent; they are evidence of Mr. Palmer's interest in children and his particular interest in naked children. The exhibits, as noted earlier, go to his intent and lack of mistake or accident.

There is prejudice from the admission of these images, but the Court does not view the prejudice as unfair. The Government represented that at trial, it will seek to introduce into evidence "images of child pornography that were recovered from the defendant's laptop, search histories reflecting searches for child pornography, and testimony that the defendant possessed hundreds of images of child pornography." *Gov't's Reply* at 5 n.5. It further states that "the evidence the Government seeks to admit via the *Govt.'s Mot. in Limine* will not be nearly as prejudicial as the defendant contends." *Id.* Although all child pornography is unsettling and disturbing to the average juror, the images in Government Exhibits One and Two are relatively benign

---

[4]     Nearly all the Government exhibits depict naked children, some in sexual situations and some not. Government Exhibits 1-1, 1-2, 1-4, 1-5 (one image), 1-6 (two images), 1-7 (one image), 1-8, 1-9, 1-10 probably meet the statutory definition of child pornography; Government Exhibits 1-3, 1-5 (one image), 1-7 (one image), 1-11, and 1-12 probably do not. Some of the second set of Government Exhibits are blurry. *See Gov't Ex.* 2-1, 2-2, 2-6, 2-7. Some do not contain any clearly visible child pornography. *See Gov't's Ex.* 2-1, 2-3, 2-6, 2-7. Some contain images that meet the definition of child pornography. *See Gov't's Ex.* 2-2, 2-4 (one image), 2-5 (one image).

compared with images the Court has routinely encountered in child pornography cases, thereby lessening the prejudicial impact on Mr. Palmer.

There is also prejudice from the admission of the children's clothing and baby pacifiers, especially since this evidence may worry jurors about the danger Mr. Palmer potentially presents to children, even babies. Nevertheless, the Court views this potential prejudice as less than the probative value of the evidence, particularly since there is nothing inherently prejudicial about these exhibits, absent the context of a child pornography charge. Under Rule 403, the Court concludes that the probative value of Government Exhibits 1, 2, 3, 4, and 5 is not substantially outweighed by the risk of unfair prejudice.

Mr. Palmer is correct that under Rule 404(b) the jury may not use the Government's proposed evidence to draw conclusions about his character or his propensity to commit the charged crime. *Def.'s Opp'n* at 4. In fact, Rule 404(b) echoes Mr. Palmer's contention, providing that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b). To make certain that the jury does not use this evidence inappropriately, the Court will give, upon request, a limiting instruction to the jury.[5] *See United States v. Moon*, 802 F.3d 135, 144–45 (1st Cir. 2015); *United States v. Majeroni*, 784 F.3d 72, 75–76 (1st Cir. 2015); *Gonyer*, 761 F.3d at 164.

---

[5]      In *Majeroni*, the First Circuit quotes a limiting instruction given by Judge Singal of this District concerning a prior conviction for possession of child pornography in a trial involving the possession of child pornography. 784 F.3d at 75–76 n.3. If counsel wish to propose a specific limiting instruction, they are free to do so.

11

### 3.   Rule 414

The Government also contends that these exhibits are admissible under Rule 414. *Gov't's Mot.* at 7–11. Acknowledging that Rule 414 may apply, Mr. Palmer urges the Court to apply a Rule 403 analysis and exclude the images. *Def.'s Opp'n* at 5–7. As the Court has undertaken a Rule 403 analysis and has concluded that Government Exhibits 1 through 5 are admissible, the Court concludes that if Rule 414 applies, the exhibits would be admissible under that Rule as well.

### B.   The Winter Harbor Incident

In its motion, the Government says that about July 8, 2013, the Winter Harbor Library expelled Mr. Palmer for viewing child pornography at the library, and that Mr. Palmer admitted being expelled for doing so. *Gov't's Mot.* at 7. In support, the Government points to Exhibit 9, which appears to be a police report dated July 8, 2013, that was generated in response to a complaint from a person at the Winter Harbor Library. *Gov't's Ex.* 9. The charge being investigated is criminal trespass. *Id.* at 1, 4. The report says:

> [The librarian] reported that Jack Palmer DOB: 1950 be asked not to return to   the library or its property due to visiting inappropriate websites, he admitted     he had been doing it and hasn't since he was told not to again, he signed the  warning and left.

*Id.* at 4. The Government also points to Government Exhibit 7, which is the summary of an October 23, 2014 interview of Jack Palmer by Detective Chris Tupper of the Maine State Police. *Gov't's Ex.* 7. The report contains the following sentence:

> Jack confirmed that he had been expelled from the Winter Harbor Library for   viewing child pornography.

12

*Id.* at 1.

Here, the Court does not have enough information to determine whether this evidence is admissible. The police report itself does not describe what was inappropriate about the websites, and the potential charge was criminal trespass, not a sex offense involving minors under the age of 14. *See* FED. R. EVID. 414(d)(1). The Government proposes to introduce this evidence through Mr. Palmer's statements to law enforcement. *Gov't's Mot.* at 3 n.4. However, there is no evidence as to what Mr. Palmer actually downloaded at the Winter Harbor Library. Mr. Palmer's admission that he had viewed child pornography assumes that he knew the definition of child pornography under federal law and, as Government Exhibits 1 and 2 demonstrate, not all images of children that Mr. Palmer possessed constitute child pornography. The Court is chary about making assumptions about what Mr. Palmer meant when he admitted the facts underlying the library expulsion.

In *Majeroni*, the First Circuit upheld the admission of a prior conviction for the possession of child pornography but noted that because there was a guilty plea, it eliminated "any risk of having the issue of prior conduct bloom into a trial within a trial, and reducing the possibility that the admittedly prejudicial information was inaccurate." 784 F.3d at 76. Given the current state of the record, the Court is concerned about whether the Government has satisfied the *Majeroni* issues with the admission of prior conduct.

The Court dismisses this portion of the motion in limine and a final ruling will await trial. The Court will not allow the Government to reference this evidence in its

opening statement and will require the Government to alert the Court before attempting to introduce this evidence at trial.

### C. The Landlord's Testimony

According to the Government, law enforcement interviewed Larry Smith on May 6, 2016. *Gov't's Ex.* 8, *Dep't of Homeland Security Interview of Larry Smith.* The Government proposes to admit evidence through Mr. Smith that Mr. Palmer had lived in his apartment complex for about fifteen years. *Id.* at 2. During the interview, Mr. Smith describes three matters involving Mr. Palmer and child pornography. First, he says that he had pleaded with Mr. Palmer to stop looking at child pornography because he was going to get arrested and Mr. Palmer replied that he would not get in trouble because he did not download child pornography. *Id.* at 3. Next, Mr. Smith said that Mr. Palmer had broken into his office and used Mr. Smith's computer to download child pornography. *Id.* Mr. Smith said that he deleted all the child pornography from his computer and reported the matter to the local police. *Id.* Third, Mr. Smith confirmed that Mr. Palmer's apartment contained child pornography pictures taped on the walls. *Id.*

The Court concludes that it does not have enough information to determine whether items one and two will be admissible. *See Majeroni*, 784 F.3d at 76. For example, the Court does not know when these incidents took place, how Mr. Smith knew that Mr. Palmer was downloading child pornography, and whether Mr. Smith was aware of the legal definition of child pornography. The third incident—what Mr. Smith saw when entering Mr. Palmer's apartment—is potentially admissible if Mr.

Smith is able to identify Government Exhibits One and Two as the pornography he observed taped to Mr. Palmer's wall.

As with the library evidence, the Court dismisses this portion of the motion in limine and a final ruling will await trial. The Court will not allow the Government to reference this evidence in its opening statement and will require the Government to alert the Court before attempting to introduce this evidence at trial.

## IV.  CONCLUSION

The Court GRANTS in part and DISMISSES in part the Government's Motion in Limine (ECF No. 40). The Court GRANTS that part of the motion seeking a pretrial ruling of admissibility of Government Exhibits 1-1 through 1-12, 2-1 through 2-7, 3-1 through 3-2, 4-1 through 4-2, and 5. The Court DISMISSES that part of the motion seeking a pretrial ruling on the admissibility of the Winter Harbor Library evidence and of Larry Smith's proposed testimony. The Court's final ruling on those matters will await further development at trial.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 6th day of September, 2016

15